IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTA M. JABUREK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-cv-02150 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| ANTHONY FOXX, U.S. Secretary of Transportation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roberta Jaburek alleges that her employer, the Federal Aviation Administration ("FAA"), discriminated against her because of her Mexican national origin and her gender by paying her less than employees who did the same job but did not share those characteristics. She claims that the discrimination violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). She also alleges that the FAA retaliated against her for her discrimination complaints. Now before the Court are Jaburek's motion for summary judgment on her Title VII gender discrimination claim (Dkt. No. 21) and a motion by the official who presides over the FAA, Secretary of Transportation Anthony Foxx ("the Secretary")[1] for summary judgment on all claims (Dkt. No. 29). For the reasons detailed below, Jaburek's motion is denied and the Secretary's motion is granted.

## BACKGROUND

Jaburek began her employment with the FAA as a secretary in its Des Plaines, Illinois office in 1987. (Pl.'s Resp. to Def.'s R. 56.1 Stmt. ¶ 5, Dkt. No. 36.) Her pay grade was GS-5.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Foxx has been automatically substituted as the defendant in place of his predecessor in office, Ray LaHood.

(*Id.*) In 1994, she was promoted to the position of Administrative Support Assistant and her pay grade was raised to GS-6. (*Id.* ¶ 10.)

On December 10, 1995, Jaburek received a promotion to the position of Program Analyst for the Technical Support Services Contract ("TSSC") group. (Pl.'s R. 56.1 Stmt. Ex. 3, Dkt. No. 24-1 at 10 of 12.) Her pay grade was raised to GS-7. (*Id.*) Jaburek was reassigned from the TSSC Program Analyst role back to a grade GS-6 administrative assistant position on April 8, 1996. (Pl.'s R. 56.1 Stmt. Ex. 5, Dkt. No. 24-2 at 2 of 12.) Jaburek now disputes the Secretary's assertion that the TSSC Program Analyst promotion was a temporary assignment and contends that she returned to the administrative assistant role because she was "demoted." (Pl.'s Resp. to Def.'s R. 56.1 Stmt. ¶ 12, Dkt. No. 36). But in her complaint in this case, she describes the Program Analyst position as a "term appointment." (Compl. ¶ 7, Dkt. No. 1.) Similarly, in Jaburek's April 17, 2012 affidavit for the Department of Transportation's investigation of her administrative complaint (Def.'s R. 56.1 Stmt. Ex. E, Dkt. No. 31 at 100 of 189) and in her January 17, 2014 deposition (Def.'s R. 56.1 Stmt. Ex. C, Dkt. No. 31 at 52 of 189) she characterized the Program Analyst assignment as a "temporary detail." The assignment to the Program Analyst position in 1995 and her return to her prior job grade the following year are not otherwise at issue in this matter.

In January 2008, Julie Hale became manager of the FAA's Engineering Support Group in the FAA's Central Service Area and the supervisor of a group of employees that included Jaburek. (Aff. of Julie Hale ¶¶ 2, 4, Def.'s R. 56.1 Stmt. Ex. H, Dkt. No. 31 at 115 of 189.) Hale was stationed in Fort Worth, Texas, had an administrative assistant who was also located there, and decided that she did not need Jaburek to serve in the same role in Des Plaines. (*Id.* ¶¶ 7-8.) She assigned Jaburek to support a TSSC Engineering Technical Officer ("ETO"), Joseph Neil

2

Johnson, in the Des Plaines office. (*Id.* ¶¶ 8-9.) Jaburek's pay grade remained GS-6. (*Id.* ¶ 9.) Johnson was assisted by two TSSC Program Analysts, Maria Miller, whose pay grade was GS-12, and JoAnne Forys, whose pay grade was GS-11. (Pl.'s R. 56.1 Stmt. Ex. 24, Dkt. No. 26-2 at 35-36 of 45.) According to Johnson, Miller moved to another position, Forys retired, and Jaburek began doing the Program Analyst work they had done and "did a very fine job at it." (*Id.*)

Johnson retired in January 2010. (*Id.* at 35 of 42.) On January 28, 2010, Jaburek sent Julie Hale an e-mail message regarding "pending items that require an ETO's signature approval." Jaburek said:

> In the past I have signed these documents for Neil [Johnson], per his request, when he was on travel status (since I am an FAA employee he unofficially delegated this duty to me). I understand the previous FAA Analyst performing the same support duties as I am currently responsible for was officially designated to act as an Alternate for Neil while he was on travel status, etc. Please advise whether or not I should continue signing these documents now that Neil is no longer our ETO?

(Pl.'s R. 56.1 Stmt. Ex. 10, Dkt. No. 25-1 at 13 of 25.) Jaburek's message did not refer to her job grade or pay. Hale responded: "While I know that you are extending yourself to the max in Neil's absence, your offer is great. Please take care of signing with my approval, referring any issue to me, Lewis Jones and James Risse for help." (Pl.'s R. 56.1 Stmt. Ex. 11, Dkt. No. 25-1 at 15 of 25.) Jones was an ETO in an FAA location in Kansas City; Risse was an ETO in Fort Worth. (Pl.'s R. 56.1 Stmt. Ex. 35, Dkt. No. 39-3 at 25 of 25.) Hale's message did not refer to Jaburek's job grade or pay.

Hale left her position as manager of the Central Service Area's Engineering Support group in May 2010 and was replaced by acting manager Walter Wilson. (Aff. of Walter Wilson, Pl.'s R. 56.1 Stmt. Ex. 23, Dkt. No. 26-2 at 29 of 45.) On May 13, 2010, his administrative assistant sent an e-mail message to a group of employees, including Jaburek, that asked them to

send a brief description of their roles and responsibilities to Wilson by the next day. (Pl.'s R. 56.1 Stmt. Ex. 12, Dkt. No. 25-1 at 17 of 25.) Jaburek responded with a message attaching a document of nearly three single-spaced pages that detailed her activities. (*Id.* at 17-20 of 25.) The document's second paragraph began: "My role encompasses acting in the capacity of the FAA Program Analyst." (*Id.* at 18 of 25.) Jaburek did not mention her job grade or pay in either the message or the attached job description.

Lourdes Lay became acting manager of the Central Service Area Engineering Support group on September 12, 2010. (Aff. of Lourdes Lay, Def.'s R. 56.1 Stmt. Ex. N, Dkt. No. 31 at 160 of 189.) On September 13, 2010, Jaburek sent Lay an e-mail message that read, "Per your request, please see the attachment." (Pl.'s R. 56.1 Stmt. Ex. 14, Dkt. No. 25-1 at 24 of 25.) The attachment was an abbreviated version of the position description she had sent to Wilson the previous May and included the characterization of her role as "acting in the capacity of the FAA Program Analyst." (*Id.* at 25 of 25.) Like the prior description, this document did not refer to Jaburek's grade or pay.

In a letter to Jaburek dated January 17, 2011, Lay gave a detailed description of Jaburek's "assigned duties as a Secretary." (Pl.'s R. 56.1 Stmt. Ex. 22, Dkt. No. 26-2 at 26 of 45.) On January 18, 2011, Lay directed another FAA employee to disable Jaburek's access to PRISM, a database that facilitated the agency's processing of procurement requests. (Pl.'s R. 56.1 Stmt. Ex. 21, Dkt. No. 26-2 at 24 of 45; Aff. of Lourdes Lay, Def.'s R. 56.1 Stmt. Ex. N, Dkt. No. 31 at 162 of 189.)

Jaburek contacted a Department of Transportation Equal Employment Opportunity counselor on January 21, 2011. (Pl.'s R. 56.1 Stmt. Ex. 19, Dkt. No. 26-2 at 12 of 45.) She filed a complaint for discrimination and retaliation with the department on May 14, 2011. (Pl.'s R.

56.1 Stmt. Ex. 20, Dkt. No. 26-2 at 20 of 45.) The department issued a finding of no discrimination. (Compl. Ex. A, Dkt. No. 1 at 34 of 34.)

In the present suit, Jaburek alleges that the failure to adjust her personnel file to reflect her actual job assignments and the failure to compensate her for her performance of Program Analyst duties from 2008 through 2011 was discrimination on the basis of her gender and her Mexican national origin in violation of Title VII. She further alleges that the failure to pay her the same as similarly situated males also violated the EPA. Her final claim is that Lay violated Title VII by retaliating against her for opposing her unequal treatment. Jaburek seeks summary judgment on Count II of her complaint, *i.e.*, her Title VII claim that she was discriminated against on the basis of her Mexican national origin. Also before the Court is the Secretary's motion for summary judgment on all counts of Jaburek's complaint.

## **DISCUSSION**

Summary judgment is appropriate when there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party. *Gross v. PPG Indus., Inc.,* 636 F.3d 884, 888 (7th Cir. 2011). In assessing whether the movant is entitled to judgment as a matter of law, all reasonable inferences from the evidence presented must be drawn in favor of the nonmoving party. *McCann v. Iroquois Mem'l Hosp.,* 622 F.3d 745, 752 (7th Cir. 2010). However, to survive a summary judgment motion, the nonmovant must show the evidence she has that would convince a trier of fact to accept her version of events. *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007). In a Title VII employment discrimination action, a plaintiff facing summary judgment must produce sufficient evidence to allow a rational jury to conclude that her employer took adverse action against her because she belonged to a protected class. *Mullin v. Temco Mach., Inc.,* 732 F.3d 772, 777 (7th Cir. 2013).

## Title VII Discrimination Claim

The basis for Jaburek's national origin and gender discrimination claims is that she was not given the job grade and pay that her work merited. A plaintiff can establish a *prima facie* case that the failure to promote her was discrimination that violated Title VII by showing that (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside the protected group who was not better qualified that she was. *Garofalo v. Vill. of Hazel Crest,* 754 F.3d 428, 439 (7th Cir. 2014). An employee's Title VII claim for failure to promote fails if she has not applied for the position. *Peters v. Wal-Mart Stores East, LP,* 512 Fed. Appx. 622, 626 (7th Cir. 2013).

The evidence presented by Jaburek is insufficient to permit a jury to find that she applied for the Program Analyst position she now claims she was denied for discriminatory reasons. The record contains a brief mention of her having asked for a "desk audit," a process which apparently triggers review and assessment of an employee's duties. Specifically, at her deposition Jaburek was asked, "Now, when you asked for a desk audit to be done or your salary upgraded and it was not done, why did you think it was not done?" (Jaburek Dep., Def.'s R. 56.1 Stmt. Ex. C, Dkt. No. 31 at 87 of 189.) She responded, "They didn't get back to me." Then she elaborated, "I asked them. I kept waiting." (*Id.*) The testimony presented provides no additional substance and includes no detail of who she asked, when, or what form her request took.

Hale, who was Jaburek's manager for the majority of the period during which she claims to have been underpaid, testified in her affidavit that Jaburek "never complained to me that her duties were above her grade level and pay" and "never made a request to me for a desk audit for her position to be upgraded to reflect her performance of any TSSC analyst/ETO duties." (Aff. of Julie Hale ¶¶ 23-24, Def.'s R. 56.1 Stmt. Ex. H, Dkt. No. 31 at 118 of 189.) Walter Wilson,

Hale's successor, also provided affidavit testimony that Jaburek had not complained about any lack of compensation for the duties she was performing and that he did not recall her asking for a desk audit. (Aff. of Walter Wilson, Pl.'s R. 56.1 Stmt. Ex. 23, Dkt. No. 38-3 at 29 of 45.) Lay's affidavit testimony was the same. (Aff. of Lourdes Lay, Def.'s R. 56.1 Stmt. Ex. N, Dkt. No. 31 at 174 of 189.) As noted above, Jaburek's written communications to each of them advised of her duties (twice in response to requests from new superiors) but did not complain about her grade or her pay. The record thus lacks evidence that she ever applied for the Program Analyst position.

The record is also devoid of evidence of two other necessary elements of a *prima facie* failure to promote claim: that the FAA chose someone else to serve in the Program Analyst role Jaburek sought and that the chosen person was outside her protected groups and no more qualified than she was.

Jaburek's arguments instead emphasize that her supervisors were "on clear notice of her actual job duties and responsibilities." (Pl.'s R. 56.1 Reply ¶ 33, Dkt. No. 44.) She has also provided ample evidence that for some time, she performed at least some of the tasks that had been the duties of Program Analysts. But this evidence does not establish the *prima facie* elements of a claim for failure to promote. The Secretary is therefore entitled to judgment on Counts I and II of Jaburek's complaint.

**Equal Pay Act Claim**

Count III of Jaburek's complaint raises a claim under the EPA. That statute provides that, "[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on

jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

To establish a *prima facie* case of wage discrimination under the EPA, a plaintiff must show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions. *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). The statute's "within any establishment" language is interpreted to impose a geographic limitation: the employees to be compared for purposes of demonstrating gender-based pay discrimination are generally limited to those who work in the same geographic office. "[E]ach physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). Accordingly, in the absence of evidence that would show the propriety of treating different locations as a single establishment, a plaintiff's failure to show more highly paid workers of the opposite gender at her own location is fatal to her EPA claim. *Toomey v. Car-X Assocs. Corp.*, No. 12 CV 4017, 2013 WL 5448047, at *6 (N.D. Ill. Sept. 30, 2013).

In the present case, Jaburek has filed a document that she identifies as a TSSC directory of employees and cites it as proof that two male employees have Program Analyst titles within the group. She identifies them as Joe Dahl and "James Desaree."[2] (Aff. of Roberta Jaburek ¶¶ 10-11 & att., Pl.'s Opp. to Def.'s Mot. for Summ. J. Ex. 36, Dkt. No. 39-3 at 24-25 of 25.) She also identifies Del Swicheck as a male Program Analyst. (*Id.* at 24-25.) The directory document identifies individuals by location; Joe Dahl is in an Anchorage group; Desaree James is in Seattle. Del Swichek does not appear on the list. No Program Analysts are listed in Chicago

---

[2] Each of the names on the purported directory appears to be listed in first name-last name order, *e.g.* "Joe Dahl, Barbara Heatherington, Neil Johnson." "James Desaree," the name cited in Jaburek's affidavit, does not appear on the directory page. But "Desaree James" does. The apparent discrepancy between the name order in the directory and in Jaburek's pleadings appears to be unique to this individual.

or in Fort Worth, the location of Jaburek's prior managers. She has thus failed to offer evidence of more highly paid males in her own location.

Jaburek has also failed to provide the additional comparative detail required for an EPA claim. A plaintiff must show that men were being paid more for equal work requiring substantially similar skill, effort, and responsibilities, and that the work was performed under similar working conditions. *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir.1998). In *Goodman v. National Security Agency, Inc.*, 621 F.3d 651, 657 (7th Cir. 2010), for example, the court held that a plaintiff's attempt to compare herself to employees without showing "who these employees were, what their duties were, when they started work, where they worked, and what their backgrounds were" was "so woefully inadequate that the issue did not merit the [district] court's time." In the present case, Jaburek has shown the names of two, possibly three, males who hold the Program Analyst position. She has provided no evidence of their reporting relationships, their training, their backgrounds, their daily duties, or any other facts that would permit a jury to find that they were doing comparable work even if they were in the same location. Since she has not established the required EPA claim elements of comparable men in the same location, the Court grants summary judgment in favor of the Secretary on Count III, Jaburek's EPA claim.

## Title VII Retaliation Claim

Jaburek's final claim is a Title VII claim for retaliation. She alleges that her superiors took action against her after learning of her complaints about her deficient compensation. Title VII "forbids employers from retaliating against employees by taking adverse employment actions for complaining about prohibited discrimination." *Chaib v. Indiana,* 744 F.3d 974, 986 (7th Cir. 2014). To succeed on a Title VII retaliation claim, an employee must show that her

employer subjected her to an action that would cause a reasonable worker to be dissuaded from making or supporting a charge of discrimination. *Id.* at 986-87.

A retaliation claimant must show that she took some step in opposition to a form of discrimination that Title VII prohibits. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 631 (7th Cir. 2011). Jaburek's communication to Hale that she had been signing documents on Johnson's behalf and her question as to whether she should continue that practice cannot be construed as a complaint about illegal discrimination. Nor can her response to Wilson and Lay when each, upon joining her group, asked for a written description of her duties. No evidence presented by Jaburek would permit a jury to find that her letters to her managers in 2010 were protected activity that could form the basis for a claim of retaliation in violation of Title VII.

Jaburek also complains of Lay's decision to remove her from more challenging duties and to confine her more strictly to an administrative role. The restriction of an employee to less desirable duties can be a materially adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 70-71 (2006). But a plaintiff cannot show that she was retaliated against for conduct that her employer did not know about. *Peters v. Wal-Mart Stores East, LP,* 512 Fed. Appx. 622, 626-27 (7th Cir. 2013) (citing *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 668-69 (7th Cir. 2006)). As noted above, Lay took steps to limit Jaburek to administrative duties on January 17, 2011. Jaburek has not presented evidence sufficient to support a jury finding that she voiced any complaints about her pay before that date. Jaburek first contacted an equal employment opportunity counselor on January 21, 2011 in response to the change in her duties. The changes imposed by Lay could not have been retaliation for complaints that had not yet been heard. The Secretary is therefore entitled to judgment on Jaburek's retaliation claim as well.

## **CONCLUSION**

For the foregoing reasons, Jaburek's motion for summary judgment on Count II of her complaint is denied. The motion by Secretary Anthony Foxx for summary judgment on all claims is granted.

ENTERED:

Dated: March 30, 2015

Andrea R. Wood
United States District Judge